Louis G. Bruhn, J.
This is a motion on behalf of the Commissioner of Agriculture and Markets of the State of New York for *345 the issuance of a warrant, pursuant to the provisions of CPLE 2308 (subd. [b]), “committing George Pafumi to jail because of his refusal without reasonable cause to answer legal and pertinent questions and produce books, papers and other things which he was directed to do and to produce by a subpoena dated July 1, 1964, and duly served July 6,1964, and by an order of this court dated September 25, 1964, duly entered in the Albany County Clerk’s office October 2, 1964, requiring compliance with such subpoena, and for such other and further relief as this court may feel just and proper.”
CPLR 2308 (subd. [b]) provides, in part: “ Unless otherwise provided, if a person fails to comply with a subpoena which is not returnable in a court, the issuer may move in the supreme court to compel compliance. * * * If a person so sub-
poenaed attends or is brought before such person or body, but refuses without reasonable cause to be examined, or to answer a legal and pertinent question, or to produce a book, paper or other thing which he was directed to produce by the subpoena, or to subscribe his deposition after it has been correctly reduced to writing, the court, upon proof by affidavit, may issue a warrant directed to the sheriff of the county where the person is, committing him to jail, there to remain until he submits to do the act which he was so required to do or is discharged according to law. Such a warrant of commitment shall specify particularly the cause of the commitment and, if the witness is committed for refusing to answer a question, the question shall be inserted in the warrant.” (Italics supplied.)
On October 21, 1964, pursuant to the aforesaid order, George Pafumi attended a hearing before Horace M. Putnam, executive assistant to the Commissioner of Agriculture and Markets.
Pafumi was duly sworn and asked certain questions by George W. Gloning, Jr., assistant counsel to the Department of Agriculture and Markets, which questions the department now claims were legal and pertinent.
Although Pafumi was ordered and directed to answer such questions his reason for refusing was reflected in his response “ I stand on the Fifth Amendment.”
In addition to directing his appearance the order aforesaid likewise directed him to produce at such time ‘ ‘ all account books, bank statements, cancelled checks, records, receipts and papers pertaining to the growing, storage or sale of apples by him or by someone else in his behalf during the period from July 1, 1959 through June 30, 1964.”
Again at such hearing he was also asked whether he had produced his records.
*346 His refusal for their production again was reflected in the answer ‘ ‘ I stand on the Fifth Amendment. ’ ’
The instant hearing was held in connection with an investigation by the Commissioner’s executive assistant “with respect to the activities of said George Pafumi as an apple grower and his responsibility and liability for reporting and accounting to the Commissioner pursuant to 1 NYCRR 201.11.”
Such rule, generally, provides for the payment of an assessment by growers, processors and storage operators handling-apples.
The Commissioner contends that the questions asked of Pafumi were “ legal and pertinent to such investigation and are intended to ascertain if he grew and produced apples, if he sold the apples grown by him, if he had reported such sales and had paid the assessment due from such sales pursuant to 1 NYCRR Part 201. The books, papers and records which were to be produced by said George Pafumi were required for the same purpose.”
There does not seem to be much dispute that the questions were pertinent to the investigation but the problem is not whether or not they were pertinent but more appropriately whether or not they were legal or illegal to an extent which justified Pafumi in asserting his constitutional privilege.
The Commissioner argues that if Pafumi actually had failed to comply with the order he would not be guilty of a crime as defined by section 41 of the Agriculture and Markets Law of the State of New York but merely a civil penalty under such law.
He argues further that since he is only subject to civil penalties he cannot incriminate himself by his answers or production of his records and consequently his assertion of privilege is without foundation.
This court is in accord with such argument, particularly since section 40 of the Agriculture and Markets Law provides that a violation of a rule or order carries a penalty not exceeding $200 for each and every offense.
Since an offense is “ an illegal act not amounting to a crime, as defined in the Penal Law, but which by statute carries with it a penalty similar to those imposed by law for the punishment of a crime ” (Matter of Waldau, 125 N. Y. S. 2d 793, 796), Pafumi is in no jeopardy so far as incrimination is concerned.
The holding in the late case of Malloy v. Hogan (378 U. S. 1) does not seem to give Pafumi any comfort even though it holds that the constitutional privilege extends to a witness in a statutory inquiry as well as to a defendant in a criminal prosecution.
*347 Such conclusion is predicated on the fact that the court stated (p. 11):
“We recently elaborated the content of the federal standard in Hoff man: ‘ The privilege afforded not only extends to answers that would in themselves support a conviction * * * but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute s * * if the witness, upon interposing his claim, were required to prove the hazard * * * he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.’ 341 U. S., at 486-487.
“ We also said that, in applying that test, the judge must be 1 1 ‘ perfectly clear, from a careful consideration, of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency” to incriminate ’. 341 U. S., at 488.”
In view of the fact that violations of the rule would subject Pafumi to civil penalties and not criminal convictions the language of the recent Court of Appeals case of McDermott v. Manhattan Eye Hosp. (15 N Y 2d 20, 28) would be particularly appropriate: ‘ ‘ Unlike his counterpart in a criminal prosecution, the defendant in a civil suit has no inherent right to remain silent or, once on the stand, to answer only those inquiries which will have no adverse effect on his case. Bather, he must, if called as a witness, respond to virtually all questions aimed at eliciting information he may possess relevant to the issues, even though his testimony on such matters might further the plaintiff’s case. We cannot agree with the suggestion that it is somehow neither sporting nor consistent with the adversary system to allow a party to prove his case through his opponent’s own testimony * * * but, whatever the merits of this view, we prefer to helio,vc that, in a situation such as the present, ‘ [t]he ultimate requirement that judicial decisions be based on the * * * facts overcomes any detriment which might be suffered by the adversary system’.” (Italics supplied.)
In view of the foregoing it is the conclusion of this court that Pafumi may not avail himself of any constitutional privilege, and consequently a warrant may issue to the Sheriff of Ulster County or any other county in New York State where the defendant is, committing him to jail there to remain until he answers *348 the questions posed and produces the records demanded or until discharged by law.
The movant is cautioned to make certain that the warrant submitted complies with the provisions of OPLB 2308 (subd. [b]).