In the Matter of the Probate of the last Will and Testament of JOHN HANCOCK, deceased.

H. died, leaving a will and three codicils; these were presented for probate, which was contested. On stipulation of the parties an order was entered to the effect that the personal assets of the estate be paid into court to abide the result of the litigation, and the surrogate thereupon took possession thereof. That officer admitted the will to probate, but denied probate of the codicils. The executors named therein, who had joined in the stipulation, appealed to the Supreme Court, where the decree of

the surrogate was reversed as to the first codicil and affirmed as to the others. After the death of the surrogate, and on application of said executors to his successor, the decree was declared null and void, on the ground that the surrogate was interested. *Held* error; that the interest was not a disqualifying one; and that the parties by whose consent the trust was reposed could not be heard to complain; also, that as by law the funds on hand at the death of the said surrogate passed into the custody of his successor, the latter could not exercise jurisdiction to vacate the decree for a cause which existed equally as to himself.

*In re Hancock* (27 Hun, 78), reversed.

(Argued January 22, 1883; decided January 30, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, made February 13, 1882, which affirmed a decree of Seth B. Cole, surrogate of the county of Rockland, setting aside a decree of E. A. Suffern, former surrogate of said county. (Reported below, 27 Hun, 78.)

The facts appear sufficiently in the opinion.

*Amos G. Hull* for appellants Allen *et al.* The custody by the surrogate of the funds of this estate created no disqualifying interest. (*Matter of Ryers et al.*, 72 N. Y. 15; *Telluson* v. *Rendelsham*, 7 H. of L. Cas. 429; *Stuart* v. *Mechanics B'k*, 19 Johns. 495; *Ten Eycke* v. *Simpson*, 11 Paige, 177, 179; *Moore* v. *White*, 6 Johns. Ch. 360; *People* v. *Edwards*, 15 Barb. 529, 531; Code of Civil Pro., §§ 2537, 2786, 2836; Redf. Pr. in Surr. Cts. 742; Dayton's Surr. 621; Laws of 1880, chap. 150; 3 R. S. [5th ed.] 195; *Wildes* v. *Russell*, Eng. Law Rep., 1 Com. Pleas, 747.) The Supreme Court and the Court of Appeals having examined the facts as an original case, their decree is conclusive on all the parties. (Redf. Pr. Surr. Cts. [2d. ed.] 791; Code of Civil Pro., § 2585; *Haviland* v. *Taylor*, 53 N. Y. 6, 7; 28 id. 494; *Thompson* v. *Stevens*, 62 id. 634.) The will in question being a will which was admitted to probate as a will of personal estate only, the statute prohibits any application to open the probate unless made within one year after the recording of the

decree admitting the will to probate. (Code of Civil Pro., § 2648; Redf. Surr. Pr. 257; Graham on New Trials, 464; *Warren* v. *Hope*, 6 Greenl. 479 *Porter* v. *Talcott*, 1 Cow. 359; *Monell* v. *Kimball*, 1 Greenl. 32; *Shumway* v. *Fowler*, 4 Johns. 425.) The executors, Hutton and Swenarton, are precluded by their own conduct from raising the question of interest. (*Wakefield B'd of Health* v. *West Riding & G. R. W. Co.*, 6 B. & S. 802.) In the State of New York the disqualification of judges by reason of interest does not apply to Surrogates' Courts, unless an objection shall be taken on behalf of the parties interested at the first hearing or proceedings before the surrogate. (R. S., §§ 2, 4, title 1, chap. 3, part 3; Laws of 1844, chap. 300, § 6; 4 Edmunds' ed. Statutes at Large, 698; 3 R. S. [Banks' 6th ed.] 439, § 28; R. S., part 2, chap. 6, title 2, art. 3, § 48; 2 Edmunds' ed., 80; 3 R. S. [Banks' 6th ed.] 85, § 75.)

*Rufus L. Scott* and *William H. Taggard* for A. Stewart Walsh et al., appellants. The surrogate was not disqualified by reason of holding the estate. (*Disbrow* v. *Mills*, 62 N. Y. 604; 3 R. S. [6th ed.], § 54, p. 116; § 58, p. 117; §§ 61, 62, p. 118; § 79, p. 120; § 93, p. 122; Redfield on Surr. Pr. 742; Code of Civ. Pro., §§ 2537, 2836, 2798, 2799.) Surrogate Cole was bound by the decree of the Supreme Court and Court of Appeals, and his own action in executing them. (Code, § 2586; *Foote* v. *Beecher*, 78 N. Y. 158; *Clapp* v. *Fullerton*, 34 id. 195; *Schenck* v. *Dart*, 22 id. 420; Graham & Waterman on New Trials, 465; *Clayton* v. *Wardell*, 3 Bradf. 1; Redfield's Surrogate, 792, 793 [2d ed.]; *Thompson* v. *Stevens*, 62 N. Y. 634.) The return submitted to the General Term, containing all the evidence taken before Judge SUFFERN, and consented to by all the parties knowing all the facts, and the decisions and decrees of the appellate courts stand as upon a case made by consent. (Code, § 1279; *Matter of Rogers*, 72 N. Y. 15; *Bell* v. *Vernooy*, 18 Hun, 125; 2 Abb. U. S. Pr. 205; *People* v. *Lember*, 2 Hun, 269; 3 R. S. [6th ed.], § 28, p. 439; Code, § 2497; Redfield's Law &

Practice, 25.) The matter charged does not come within any definition of a disqualifying interest. (Code, § 2514, subd. 11 ; § 2496, subd. 3.) Whatever disqualifying element may appear in this matter was before the Supreme Court and the Court of Appeals on the original appeal from Judge SUFFERN's decision, and the same was adjudicated by said appellate courts and such adjudication is final. (*Embury* v. *Conner*, 3 N. Y. 522; Code Civ. Pro., § 3347, subd. 8.)

*Walter H. Shupe* for respondents. The procedure followed in this motion is strictly regular. (Code, § 2481, subd. 6; Laws of 1870, chap. 359, § 1 ; *Brick's Estate*, 15 Abb. Pr. 12, 36 ; *Dobke* v. *McClaran*, 41 Barb. 491 ; *Campbell* v. *Thatcher*, 54 id. 382; *Vreedenburgh* v. *Calf*, 9 Paige, 128 ; *Pew* v. *Hastings*, 1 Barb. Ch. 452 ; *Harrison* v. *McMahon*, 1 Bradf. 283 ; *Sipperly* v. *Baucus*, 24 N. Y. 46; *Strong* v *Strong*, 3 Redf. 477; *Bailey* v. *Hilton*, 14 Hun, 3; Code, §§ 1282–1292; *Hallet* v. *Righters*, 13 How. 43; *Chappel* v. *Chappel*, 12 N. Y. 215; *Birdsoff* v. *Dojan*, 17 Abb. 36; *Moulton* v. *De Ma Carty*, 6 Rob. 470 ; *Lambert* v. *Converse*, 22 How. 265; *Bunnell* v. *Henry*, 13 id. 142; *McMurray* v. *McMurray*, 9 Abb. [N. S.] 315 ; Throop's note to § 1283 of Code; *Booth* v. *Kitchen*, 7 Hun, 260.) There being no denial of the statements made in the affidavit of Walter H. Shupe, verified September 24, 1881, the averments in such affidavits are sufficient proof. (*Cumming* v. *Wooley*, 16 Abb. Pr. 297; *Evans* v. *Holmes*, 46 How. 515.) The provision of the Code of Civil Procedure (§ 46), disqualifying a judge from sitting in a matter in which he is interested, applies to the act of A. Edward Suffern, as surrogate, in the entry of the decree of probate, Nov. 10, 1879. (3 R. S. 275, part 3, chap. 3, title 1, § 2; 3 R. S. [6th ed.] 436, 439; Laws of 1844, chap. 300, § 6 ; 2 R. S., part 3, chap. 3, title 1, § 14 ; 1 R. L. 446, § 16, as amended by Laws of 1830, chap. 320, § 19 ; 2 R. S. 79, part 2, chap. 6, title 2, § 48 ; 3 R. S. [6th ed.] 85 ; Laws of 1847, chap. 280, § 81 ; 3 R. S. [6th ed.] 437, § 8 ; Code of Civil Procedure, § 46 ; Laws of 1877, chap.

417; 2 R. S. 275, part 3, chap. 3, title 1, § 2; Laws of 1847, chap. 280, § 81; 2 R. S., part 2, chap. 6, title 2, art. 3, § 49, as amended by Laws of 1843, chap. 121, § 1; Laws of 1847, chap. 470, §§ 27, 32; 3 R. S. [6th ed.] 85, 86, § 78; Laws of 1871, chap. 859, § 8; 1 R. S. [6th ed.] 392, § 25; Laws of 1880, chap. 245; Code of Civil Procedure, §§ 46, 3347, subd. 11.) Any relation between a judicial officer and a subject-matter, through which he may be affected to his personal or pecuniary advantage or disadvantage, or required to account for acts in respect thereto in a representative capacity, is a disqualifying interest. (*Hawley* v. *Baldwin*, 19 Conn. 589; *Hesketh* v. *Braddock*, 3 Burr. 1847; *Pearce* v. *Atwood*, 13 Mass. 339; *State, ex rel. Claunch*, v. *Castleberry*, 23 Ala. 91; *Wilson* v. *Wilson*, 36 id. 655; *Bacon, Appellant*, 73 Mass. 391; *Moses* v. *Julian*, 45 N. H. 52; 1 Hadley, 52, 155, 59; *Knight* v. *Hardman*, 17 Ga. 253; *Matter of Dodge*, 77 N. Y. 107; *Dimes* v. *Grand Junction Canal Co.*, 3 H. of L. Cases, 759; *Gregory* v. *C. C. & C. R. R. Co.*, 4 Ohio, 678; *P. Ry. Co.* v. *Howard*, 20 Mich. 18; *Milner* v. *Ga. R. R. & B. Co.*, 4 Ga. 385; *Rivenburg* v. *Henners*, 4 Lans. 211; *Converse* v. *McArthurs*, 17 Barb. 410; *Peyton's Appeal*, 12 Kans. 398.) If a judge of probate is either a creditor or debtor of an estate he is disqualified by reason of interest. (*Cottle, Appellant*, 22 Mass. 483, 484; *Coffin* v. *Cottle*, 26 id. 287; *Sigourney* v. *Sibley*, 38 id. 101, 104; 39 id. 507; *Gay* v. *Minot*, 57 Mass. 307; *Queen* v. *Justices of Suffolk*, 18 Q. B. 416; *S. C.*, 14 E. L. & E. 93; *King* v. *Inhab. of Yarpole*, 4 Term R. 71; *Queen* v. *Justices of Hertfordshire*, 6 Q. B. 753; *Darling* v. *Pierce*, 15 Hun, 546; *People, ex rel. Roe*, v. *Suffolk*, Com. Pleas, 18 Wend. 550; *Fox* v. *Johnson*, 3 Cow. 20; *Strong* v. *Strong*, 63 Mass. 570; *Williams* v. *Robinson*, 60 id. 333; *Freelove* v. *Smith*, 9 Vt. 180; *Thelluson Will Case*, 7 H. of L. Cases, 429; *Robinson* v. *Melvin*, 14 Kans. 488; *Hall* v. *Thayer*, 105 Mass. 219; *Tolland* v. *Co. Comm'rs*, 13 Gray, 12; *Fox* v. *Hazleton*, 10 Pick. 275.) Where an interested judge is prohibited to sit by statute, all his proceedings are *coram non judice*, and absolutely

void. (*Oakley* v. *Aspinwall*, 3 N. Y. 547; *Edwards* v. *Russell*, 21 Wend. 63, 64; *Foot* v. *Morgan*, 1 Hill, 654; *Schoonmaker* v. *Clearwater*, 41 Barb. 200; 1 Keyes, 310; *Converse* v. *McArthur*, 17 Barb. 410; *People* v. *Tweed*, 50 How. 434; *Gay* v. *Minot*, 57 Mass. 352; *Hall* v. *Thayer*, 105 id. 219; *Sigourney* v. *Sibley*, 38 id. 101; *Coffin* v. *Cottle*, 26 id. 287; *Cottle, Appellant*, 22 id. 483; *Bacon, Appellant*, 73 id. 391; *Hawley* v. *Baldwin*, 19 Conn. 589; *Heydenfeldt* v. *Towns*, 27 Ala. 423; *Moses* v. *Julian*, 45 N. H. 52; *State, ex rel. Claunch*, v. *Castleberry*, 23 Ala. 91; *Wilson* v. *Wilson*, 36 id. 655; *People* v. *De La Guerra*, 24 Cal. 77; *Stockwell* v. *Town B'd*, 22 Mich. 341; *P. R'y Co.* v. *Howard*, 20 id. 18.) The defect goes to the jurisdiction and cannot be made good by consent, waiver, stipulation, or even confirmation; nor does it matter whether the judgment rendered be altogether a just one; and where the interested judge is only one of several sitting, the rule is the same. (*Stockwell* v. *Town B'd*, 22 Mich. 341; *Oakley* v. *Aspinwall*, 3 N. Y. 547; *Milner* v. *Ga. R. R. & B. Co.*, 4 Ga. 385; *Schoonmaker* v. *Clearwater*, 41 Barb. 200; *Moses* v. *Julian*, 45 N. H.; *Chambers* v. *Clearwater*, 1 Keyes, 310; *Strong* v. *Strong*, 63 Mass. 570; *Hall* v. *Thayer*, 105 id. 219; *Sir Fr. Bacon's Case*, 2 Camp. Lives [2d Am. ed.], 336; *Gay* v. *Minot*, 57 Mass. 352; *Sigourney* v. *Sibley*, 33 id. 101, 104; *Queen* v. *Justices of Hertfordshire*, 6 Q. B. 753; *Queen* v. *Justices of Suffolk*, 18 id. 416; *Post* v. *Black*, 5 Denio, 66; *Tousley* v. *McDonald*, 32 Barb. 604; *Welles* v. *Thornton*, 45 id. 390; *Wilson* v. *Town of Caneadea*, 15 Hun, 218; *People, ex rel. Green*, v. *Smith*, 55 N. Y. 135; *Green* v. *Comm'rs for Cheltingham*, 1 Q. B. 467; *Wyse* v. *Withers*, 3 Cranch, 331; *Latham* v. *Egerton*, 9 Cow. 227; *Kamp* v. *Kamp*, 59 N. Y. 212; *Clayton* v. *PerDun*, 13 Johns. 218; *Roderigas* v. *E. R. S'v'gs Inst.*, 76 N. Y. 318; *Matter of Ryers*, 72 id. 13.) The taking and possession of actual assets or property belonging to the estate of the decedent by A. Edward Suffern was either as a court or as an individual. If as a court, it was legally impossible; if as an individual, Suffern became the trustee of an

implied trust, and as such was personally liable to account, and therefore interested. (1 Laws of New York, revised, 1813, 446, chap. 79, § 27; 2 R. S. 220, part 3, chap. 2, title 1, § 1; 3 R. S. [6th ed.] 79, 325, 327; 2 Laws of Maryland, chap. 101; 2 R. S. 76, part 2, chap. 6, title 2, art. 2, § 38; 3 R. S. [6th ed.] 79; *Walker* v. *Wollaston*, 2 P. Wms. 589; *Wilbur* v. *Rich*, 2 Atk. 286; Prior, 1742; Willard on Executions, 219; Perry on Trusts, §§ 166, 217; id., §§ 443, 446.)

Danforth, J.: John Hancock died on the 12th of September, 1874, leaving a will and three codicils, in which he named John Swenerton, John W. Hutton and John Bell Locke, executors. In the same month the will was presented for probate by John Swenerton to A. Edward Suffern, the then surrogate of Rockland county, and the usual citation issued, returnable on the 16th of November, 1874. At the return day allegations were made by various parties against the validity of the will and codicils. On the 26th day of December, 1874, Walsh, one of the next of kin of the testator, presented his petition to the surrogate for special letters of administration, authorizing the preservation and collection of the goods of the deceased, whereupon on the 18th of January, 1875, it was stipulated in writing by the proponents and contestants, and their counsel, and Walsh, his attorney, "that the personal estate and all effects, properties, choses in action, and demands thereunto belonging be paid and delivered into court to abide the further order and disposition of the court" thereupon. This stipulation was filed, and an order was to that effect duly entered. The surrogate took possession of the property. Litigation over the probate of the will continued with such success that on the 10th day of November, 1879, he admitted the will to probate, and issued letters testamentary to Messrs. Locke, Allen and Walsh, the executors named therein. He denied probate to the first codicil as not well executed, and to the second and third as having been induced by fraud. No appeal was taken from the decree admitting the will to probate, but John Swenerton and John W. Hutton appealed to the Supreme Court from

so much of the decree as rejected the three codicils, and on the 13th of September, 1880, the General Term of the second department reversed the decree as to the first codicil, and affirmed it as to the second and third. An appeal was then taken to this court from so much of the judgment of the Supreme Court as affirmed the surrogate's decree, and on the 1st of March, 1881, it was affirmed, and the remittitur duly filed on the 12th of March, 1881.

After this, but when does not appear, Surrogate Suffern died and was succeeded by Surrogate Cole. On or about August 24, 1881, Hutton presented to him a petition to have the decree of November 10, 1879, vacated, and a new trial granted, and on the 28th of December, 1881, the application was granted and the decree was declared null and void. The precise ground of the application and the order was that the surrogate by whom the decree was pronounced did, on the 25th or 26th of January, 1875, convert certain assets embraced in the stipulation and order of January 18, 1875, into money, and "neither paid the same into court, nor to the estate, nor to any one for the benefit of the estate," and so became interested in the estate to that amount, and remained so from that date. This fact has not been established by any legal proceeding, nor by legal evidence. As to it, the surrogate in his life-time was not heard, nor since his death, have his representatives been heard, but from the moment he received the property under the stipulation, he became liable to account for it, and he then acquired an interest of the same kind as that now charged upon him. The evidence of conversion, therefore, need not be criticised. Was the interest with which he was invested, assuming the allegations to be true, a disqualifying one? *First.* It is clear he acquired no interest in the estate, nor in the subject-matter of the question upon which he adjudicated.

*Second.* If the will went to probate, he was liable to account to the executors and persons interested, under the will; if it was denied probate, he must account to the personal representatives of the deceased.

*Third.* He was placed in this position by the wish and con-

sent, among others, of the party who now complains, but who acquiesced in the probate of the will, and procured from the Supreme Court a judgment in favor of the codicil, and who, as party to the stipulation, was cognizant of the trust reposed in the surrogate, if not of the conduct concerning which he now complains.

Judicial proceedings would be rendered insecure and perverted into snares for litigants, if a party so situated could successfully impeach a decision which he promoted at a time when he was not ignorant of the cause of invalidity which he now sets up. Of necessity sometimes, and by force of the statutes in many cases, the surrogate receives funds belonging to estates concerning which he acts as custodian, and as to which he is at all times liable to account, and it would be a singular result if that liability should deprive him of jurisdiction in controversies properly before him. It may involve him in difficulty, and as the funds on hand at the death of Surrogate Suffern passed by law into the custody of his successor, it is difficult to see upon what principle he could exercise jurisdiction to vacate the decree of his predecessor, for a cause which also existed as to himself.

To what length shall the rule of disqualification be carried? The present surrogate, as appears by the papers, has paid over to the executors of John Hancock, upon letters issued by Surrogate Suffern, certain money and assets assumed to belong to that estate. Did he pay over the whole, or did he pay over some which belonged to Suffern personally, or to other estates? Can the executors of Hancock be required to account before him, or has he lost jurisdiction either to entertain such proceedings, or proceedings by the estate of Suffern, or in behalf of other estates, whose funds may be alleged to have mingled with those received by Suffern from the Hancock estate? *Disbrow* v. *Mills* (62 N. Y. 604) shows that such perplexities may arise, but it does not appear that loss of jurisdiction is to follow. It is no doubt a rule of the common law that no man can be a judge in his own cause, and this also has been declared by statute, but the interest must be that of party to the matter,

or of such a nature as would involve direct pecuniary gain or loss. Here it was neither, nor was it even contingent or possible.

I have examined many of the various cases cited by the respondent, and all which from the citation seemed likely to support his views, but discover none which give color to the contention upon which the judgment appealed from rests.

The decree of the surrogate vacating the decree made by Surrogate Suffern, November 10, 1879, and the judgment of the General Term thereon, should, therefore, be reversed, with costs to be paid by the respondent personally.

All concur.

Judgment reversed.